# In the United States Court of Federal Claims

No. 17-1638
Filed: March 23, 2020
Reissued: April 22, 2020[1]

| | |
|---|---|
| 2M RESEARCH SERVICES, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE UNITED STATES, )<br>)<br>Defendant, )<br>)<br>VISION PLANNING & CONSULTING LLC, )<br>)<br>Defendant-Intervenor. )<br>) | Attorneys' Fees; Equal Access to Justice Act; EAJA; 28 U.S.C. § 2412; 28 U.S.C. § 2412(b); 28 U.S.C. § 2412(d)(2)(A); Special Factor; Cost of Living Adjustment; Limited Availability of Qualified Attorneys. |

*Jessica Catherine Abrahams*, Drinker, Biddle & Reath, Washington, DC, for plaintiff.

*Nathanael Brown Yale*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

*Patrick Trent Rothwell*, PilieroMazza PLLC, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

*SMITH*, **Senior Judge**

     This action is before the Court on plaintiff's Application for Attorneys' Fees and Costs. Plaintiff, 2M Research Services ("2M"), is a certified small business that specializes in providing research, program evaluation, statistical consulting, and program-support-related services to federal agencies. *2M Research Servs., LLC v. United States*, 139 Fed. Cl. 471, 474 (2018). On October 31, 2017, plaintiff filed a complaint with this Court, protesting the Federal Emergency Management Agency's ("FEMA") decision to award a contract to Vision Planning & Consulting, LLC under Solicitation No. HSFE40-16-R-0002. Complaint, ECF No. 1 (hereinafter "Compl."), at 1. On July 25, 2018, the Court entered judgment in favor of plaintiff, holding that the award was arbitrary and capricious. *See 2M Research Servs.*, 139 Fed. Cl. at 480. On December 27, 2018, plaintiff timely filed its Application for Attorneys' Fees and Costs pursuant

---

[1]    An unredacted version of this opinion was issued under seal on March 23, 2020. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2018). *See generally* Plaintiff's Application for Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act, ECF No. 65 (hereinafter "Pl.'s EAJA Appl."). In response, the government claims the following: (1) 2M failed to demonstrate that it is eligible for EAJA fees; (2) 2M's exhibits raise concerns as to whether 2M, rather than its subcontractor, actually incurred the expenses alleged; and (3) 2M is not entitled to enhanced attorneys' fees based on a "special factor." *See generally* Defendant's Response to Plaintiff's Motion for Attorneys' Fees and Litigation Expenses Pursuant to the Equal Access to Justice Act, ECF No. 68 (hereinafter "Def.'s EAJA Resp."). For the reasons set forth below, the Court awards plaintiff $97,169.13 in attorneys' fees and costs.

## I.     Background

On December 27, 2018, after the Court entered judgment in favor of 2M, plaintiff timely filed its Application for Attorneys' Fees and Costs. *See generally* Pl.'s EAJA Appl. In that Application, plaintiff claims it is entitled to the attorneys' fees and costs it incurred during the course of litigation, as an eligible small business under § 2412(d) of EAJA. *See generally id*. In its EAJA Application, plaintiff asserts that, as 2M was the prevailing party and as the government's position in the underlying litigation was not substantially justified, it is entitled to an award of any reasonable fees and costs that it incurred during that litigation. *See generally id*.

On February 8, 2019, defendant filed its Response to plaintiff's EAJA Application, in which it alleges the following: (1) 2M failed to demonstrate its eligibility under EAJA; and (2) if the Court determines that plaintiff meets EAJA's eligibility requirements, plaintiff is not entitled to the amount requested, because no "special factor" exists that would justify an enhanced award and because a number of plaintiff's claimed expenses are not compensable. Def.'s EAJA Resp. at 1, 6, 8. On February 15, 2019, plaintiff filed its Reply, in which it reiterates its earlier EAJA arguments and alleges that, consistent with the holding in *SUFI Network Services, Inc. v. United States*, 128 Fed. Cl. 683 (2016), an enhanced award is appropriate here. *See generally* Plaintiff's Reply in Support of its Application for Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act, ECF No. 69 (hereinafter "Pl.'s EAJA Reply"). On April 15, 2019, the Court ordered plaintiff to file "audited financial statements regarding plaintiff's net worth at the time it filed its initial Complaint," as well as "evidence of 2M Research Services, LLC's reimbursement agreement with McKing Consulting Corporation and any evidence of a special factor warranting an increase in attorney's fees above the capped rate provided by statute." April 15, 2019 Order, ECF 70. On August 1, 2019, plaintiff filed the requested materials. *See* Plaintiff's Response to April 15, 2019 Order to Supplement Request for Attorneys' Fees Pursuant to the Equal Access to Justice Act, ECF No. 73 (hereinafter "Pl.'s Suppl. Br.").

On October 28, 2019, upon reviewing plaintiff's EAJA Application and supplemental materials, the Court ordered plaintiff to submit additional documents necessary for its review of a potential Cost of Living Adjustment ("COLA"). October 28, 2019 Order, ECF No. 74. In response, on November 18, 2019, plaintiff filed a brief and related COLA documents. *See generally* Plaintiff's Response to October 28, 2019 Order to Supplement Request for Attorneys' Fees Pursuant to the Equal Access to Justice Act, ECF No. 75 (hereinafter "Pl.'s COLA Br."). In its COLA Brief, plaintiff raised new arguments related to bad faith, in accordance with 28 U.S.C. § 2412(b). *Id*. at 6. On November 26, 2019, defendant filed its Response to plaintiff's COLA

Brief, arguing that plaintiff waived its bad faith argument. Defendant's Opposition to Plaintiff's Response to the Court's October 28, 2019 Order, ECF No. 76 (hereinafter "Def.'s COLA Resp."), at 6. Defendant further argued that, even if the bad faith argument was not waived, plaintiff has failed to demonstrate that the bad faith exception to 28 U.S.C. § 2412(b) applies. *Id.* at 7–8. On December 17, 2019, plaintiff filed its Reply in Support of its COLA Brief, further supplementing its § 2412(b) bad faith argument. *See generally* Plaintiff's Reply in Support of Response to October 28, 2019 Order to Supplement Request for Attorneys' Fees pursuant to the Equal Access to Justice Act, ECF No. 78 (hereinafter "Pl.'s COLA Reply"). Finally, on December 31, 2019, with the Court's leave, defendant filed a sur-reply, reiterating its earlier bad faith arguments. *See generally* Defendant's Sur-Reply, ECF No. 80 (hereinafter "Def.'s COLA Sur-Reply"). This matter is now fully briefed and ripe for review.

## II.   Discussion

Congress created EAJA for the purpose of placing private litigants and the government on equal footing regarding the costs of litigation. *See generally* 28 U.S.C. § 2412 (2018); H.R. Rep. No. 96-1005, pt. 1, at 5 (1980) (explaining that EAJA is "intended to respond to a chronic problem small business owners have had contesting or challenging the unreasonable exercise of Government authority because of the time and expense required to challenge the vast resources of the Federal Government."). Specifically, Congress was concerned that certain parties "may be deterred from seeking review of, or defending against[,] unreasonable governmental action because of the expense involved in securing the vindication of their rights." H.R. Rep. No. 96-1418 at 5 (1980) (capitalization omitted).

There are two grounds for fee recovery under § 2412 applicable to the case at bar. The first ground upon which a plaintiff can recover attorneys' fees and costs under EAJA is § 2412(b), which states, in relevant part, the following:

> [A] court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States . . . . The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). This Court has previously held that "[§] 2412 allows a prevailing party against the [g]overnment to recover reasonable attorneys' fees and expenses to the extent that any other party would be liable under common law." *SUFI Network Servs*, 128 Fed. Cl. at 688 (citing 28 U.S.C. § 2412(b)). Under common law, prevailing parties are entitled to recover attorneys' fees and costs when the losing party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Id.* (citations omitted).

The second applicable ground upon which the plaintiff could potentially recover fees under EAJA is § 2412(d). Pursuant to § 2412(d), a Court shall award a prevailing party attorneys' fees and costs "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). This "special

circumstances" provision acts as a "safety valve" to help "'insure [sic] that the [g]overnment is not deterred from advancing in good faith . . . credible extensions and interpretations of the law'" by giving courts the "'discretion to deny awards where equitable considerations dictate an award should not be made.'" *Meyer Grp., Ltd. v. United States*, 129 Fed. Cl. 579, 588 (2016) (quoting S. Rep. No. 96-253, at 7 (1979)).

To receive an award under subsection (d), the "owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization" cannot have more than 500 employees, and its net worth cannot "exceed $7,000,000 at the time the civil action was filed." *See* 28 U.S.C. § 2412(d)(2)(B). Additionally, eligibility for an award under EAJA requires the following:

> (1) [T]hat the claimant be a "prevailing party"; (2) that the [g]overnment's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement.

*Comm'r, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 158 (1990) (citing 28 U.S.C. § 2412(d)(1)(A)–(B)); *see also Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995); *BCPeabody Constr. Servs., Inc. v. United States*, 117 Fed. Cl. 408, 412–13 (2014).

### A.   Eligibility under EAJA

In its EAJA Application, plaintiff alleges that it meets the eligibility requirements for an award of attorneys' fees and costs pursuant to EAJA. Pl.'s EAJA Appl. at 1–2. In its Response to plaintiff's EAJA Application, defendant does not contest the following three EAJA criteria: (1) that plaintiff was the prevailing party; (2) that there are no special circumstances making the award unjust; and (3) that the application was timely filed. Def.'s EAJA Resp. at 4. Defendant also stated that, "[g]iven the Court's Opinion, for the purposes of responding to 2M's application, we are not disputing that our position was substantially justified." *Id*. However, the government does contend that 2M failed to demonstrate the existence of a special factor entitling it to reimbursement at market rates and that "2M has failed to provide any evidence that it meets the size and net worth requirements under EAJA." *Id.* Additionally, defendant raised questions as to "whether 2M 'incurred' the fees and costs it requested," as most of the provided invoices were sent to plaintiff's subcontractor, the McKing Corporation ("McKing"), but plaintiff provided no information regarding a legal fee arrangement or indicating which entity was obligated to pay the attorneys' fees. *Id.* at 5–6.

#### 1.   Net Worth and Number of Employees

As an initial matter, the Court must ascertain whether plaintiff meets the maximum size and net worth requirements provided in 28 U.S.C. § 2412(d)(2)(B). When seeking an award of attorneys' fees, "[t]he plaintiff bears the burden of demonstrating that it satisfies the net worth requirements set forth in [§ 2412(d)(2)(B)]." *Stromness MPO, LLC v. United States*, 140 Fed. Cl. 415, 433 (2018) (citing *Info. Scis. Corp. v. United States*, 86 Fed. Cl. 269, 280 (2009)).

Specifically, plaintiff must present "sufficient evidence so that his or her net worth may be ascertained and verified by the court." *Fields v. United States*, 29 Fed. Cl. 376, 382 (1993); *see also Al Ghanim Combined Grp. Co. v. United States*, 67 Fed. Cl. 494, 496 (2005) ("Failure to submit documentation of plaintiff's net worth, for the purpose of determining whether plaintiff qualifies for an award under EAJA, renders an application deficient."). This Court has previously found that "[s]elf-serving affidavits and unaudited balances, alone, are not considered sufficient to establish a plaintiff's net worth." *Info. Scis.*, 86 Fed. Cl. at 280; *see Doe v. United States*, 54 Fed. Cl. 337, 342 (2002) (holding self-serving and unsupported affidavits fail to establish a party's net worth). This Court has also found that, because the Small Business Administration ("SBA") size determination process does not include a calculation of employment numbers, such a determination is insufficient for a finding on EAJA eligibility under § 2412(d)(1)(B). *See Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 512 (2003) (holding that a size determination performed by the SBA could not be relied on for purposes of employment numbers because the SBA does not make a showing of employment numbers on a specific date).

In its EAJA Application, plaintiff proffered that, "[a]t the time this lawsuit was filed, 2M had fewer than 500 employees, and its net worth did not exceed $7,000,000." Pl.'s EAJA Appl. at 1. To support its assertion that 2M meets the maximum size requirements, plaintiff states that it is a certified small business the SBA's 8(a) program, as well as a certified HUBZone minority-owned small disadvantaged business. *Id.* In further support of its claim, plaintiff attached a signed declaration from its Chief Executive Officer and owner, Marcus Martin. *See generally* Pl.'s EAJA Reply Ex. 1. In his declaration, Mr. Martin alleges that, "as of the end of calendar year 2016, 2M had ▮ employees . . . [and that] as of the end of calendar year 2017, 2M had ▮ employees." Pl.'s EAJA Reply Ex. 1, at 2. In addition to this declaration, plaintiff provided 401(k) Profit Sharing Plan sheets for 2016 and 2017. Pl.'s EAJA Reply Exs. C, D. After careful review of the supplemental information provided in plaintiff's Reply, the Court finds that plaintiff has sufficiently demonstrated that 2M had fewer than 500 employees when the underlying litigation was initiated on October 31, 2017. *See generally* Compl.

On August 1, 2019, in response to the Court's July 12, 2019 Order, plaintiff submitted supplemental materials in support of its EAJA Application. *See generally* Pl.'s Suppl. Br. Specifically, plaintiff provided an Independent Auditors' Report from ▮▮▮▮▮▮▮▮▮, which indicated that 2M's net worth was $▮▮▮▮▮▮ as of October 31, 2017, the date plaintiff filed its Complaint. Pl.'s Suppl. Br. Ex. 1 Attach. A, at 6–12. This Court has previously held that "financial information must allow the court to determine the net worth of the applicant at the time a complaint was filed." *Info. Scis*, 86 Fed. Cl. at 280 (2009). In *Information Sciences*, the plaintiff submitted a balance sheet audited "in accordance with auditing standards generally accepted in the United States." *Id.* ▮▮▮▮▮▮ Report was conducted "in accordance with auditing standards generally accepted in the United States." Pl.'s Suppl. Br. Ex. 1 Attach. A, at 1. Based on the information provided in that report, the Court finds that 2M has successfully established that it had a net worth below the statutory maximum of $7,000,000 at the time the underlying litigation was initiated.

### 2.  Party Incurring the Attorneys' Fees and Costs

In addition to its arguments related to net worth and employment numbers, defendant suggests that plaintiff may not be eligible for attorneys' fees and costs under EAJA because it is unclear whether plaintiff was the entity that actually "incurred" those costs. Def.'s EAJA Resp. at 6. In raising these concerns, defendant points out ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* Defendant also points out that plaintiff "provided no information regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *Id.* (citing Pl.'s EAJA Appl. Ex. 2).

In its EAJA Reply, plaintiff argues that 2M—not McKing—is the entity responsible for paying the invoiced legal fees, and that McKing's payment of those invoices was "a loan or advance to 2M." Pl.'s EAJA Reply at 7. To better explain this payment scheme, plaintiff proffered the declaration of Marcus Martin, who asserted that, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.* at 4.

Pursuant to 28 U.S.C. § 2412(d)(1)(A), this Court "shall award to a prevailing party . . . fees and other expenses . . . *incurred* by that party in any civil action." (emphasis added). This Court has previously noted that "[n]either EAJA nor the legislative history provides a definition of the word 'incur.'" *R.C. Const. Co., Inc. v. United States*, 42 Fed. Cl. 57, 59 (1998) (quoting *Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406, 1408 (Fed. Cir. 1997)). However, the Federal Circuit previously concluded that "fees are incurred by a litigant 'if they are incurred on his behalf, even though he does not pay them,'" and that "the presence of an attorney-client relationship suffices to entitle prevailing litigants to receive fee awards." *Ed A. Wilson, Inc.*, 126 F.3d at 1409 (citations omitted). It is clear to the Court that, despite the fact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, 2M nevertheless incurred those expenses. Moreover, as 2M was the entity which formed an attorney-client relationship with counsel, the Court finds that plaintiff is eligible for an award of attorneys' fees under EAJA.

### B.   EAJA Rate Enhancements

#### 1.  Enhanced Award of Attorneys' Fees and Costs

In addition to promulgating its EAJA eligibility arguments, plaintiff argues that it is entitled to "the totality of attorney's fees and costs actually incurred," rather than payment subjected to the statutory cap of $125 per hour under 28 U.S.C. § 2412(d)(2)(A)(ii). Pl.'s EAJA Reply at 7. Originally plaintiff requested $265,134.22 in attorneys' fees and costs. Pl.'s EAJA Appl. at 1. However, as of its most recent filing, plaintiff's requested award totals $315,252.53 in enhanced attorneys' fees and costs for its proffered 491.3 billable hours. Pl.'s COLA Br. at 4. 28 U.S.C. § 2412(d)(2)(A)(ii) provides for two exceptions to the statutory cap, stating that "attorney fees shall not be awarded in excess of $125 per hour *unless the court determines that an increase in the cost of living or a special factor*, such as the limited availability of qualified

attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii) (emphasis added).

### i. Special Factors

Absent a statutorily enumerated exception, EAJA sets the statutory cap for an award of attorneys' fees at $125 per hour. 28 U.S.C. § 2412(d)(2)(A). The first of these exceptions applies when the Court determines that "special factors" warrant an enhanced award. *Id.* Plaintiff alleges that it is entitled to an enhanced fee award under 28 U.S.C. § 2412(d)(2)(A), claiming that "[t]here can be no doubt that special factors exist warranting the enlargement of legal fees." Pl.'s EAJA Reply at 10. Defendant argues that special factors do not apply to the case at bar, highlighting that the Supreme Court previously held that the "limited availability of qualified attorneys" refers to attorneys qualified for the proceedings in some specialized sense, examples of which include "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." Def.'s EAJA Resp. at 7 (citing *Pierce v. Underwood*, 487 U.S. 552, 572 (1988)). Defendant also notes that the Court of Federal Claims has consistently "declined to hold that 'expertise in government contracts law per se satisfies the EAJA special factor requirement.'" Def.'s EAJA Resp. at 7 (citing *Cal. Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 733 (1999)). In support of its "special factors" argument, plaintiff relies heavily on *SUFI Network Services*, in which the Court determined that the plaintiff adequately demonstrated the applicability of the following two relevant "special factors" and, as a result, an enhanced fee award was warranted: (1) exceptional results; and (2) limited availability of qualified attorneys. Pl.'s EAJA Reply at 8; *see generally SUFI*, 128 Fed. Cl. 683.

Plaintiff argues that, as "this case required that counsel possess both distinctive government contracts knowledge and specialized bid protest skills beyond the general level for all litigators," 2M is "entitled to an award of the totality of attorneys' fees and costs actually incurred." Pl.'s EAJA Reply at 7. To support that assertion, plaintiff posits that "2M sought counsel experienced and preeminent in government contracts, bid protest litigation, and small business programmatic issues," and that counsel's "experience with FEMA was also a decided advantage." *Id.* at 9. In its COLA Brief, plaintiff expands on this, alleging that "the issues in the instant case were such that only a small subset of government contracts lawyers had the legal expertise necessary to handle and prevail in this case." Pl.'s COLA Brief at 6. In addition to the allegedly "specialized knowledge" required for bid protest litigation, plaintiff asserts that "cases involving the small business program," such as the case at bar, "involve an additional layer of complexity and rules that general litigators would not be equipped to properly handle." Pl.'s COLA Br. at 7.

In *Pierce v. Underwood*, the Supreme Court held that "[i]f 'the limited availability of qualified attorneys for the proceedings involved' meant merely that lawyers skilled and experienced enough to try the case are in short supply, it would effectively eliminate the [statutory] cap." 487 U.S. at 571. Applying the "limited availability" exception so broadly would result in that special factor being "virtually always present when services with a market rate of more than [the statutory cap] have been provided." *Id.* at 572. To qualify under the "limited availability" exception, an attorney must have "some distinctive knowledge or specialized skill," such as "an identifiable practice specialty such as patent law, or knowledge of

foreign law or language." *Id.* Subsequent courts have "analogized many different fields of law to that of patent law in finding that certain fields require expertise possessed by a limited number of qualified attorneys." *SUFI*, 128 Fed. Cl. at 701; *see also*, *e.g.*, *Nadarajah v. Holder*, 569 F.3d 906, 913 (9th Cir. 2009) (determining that immigration law warrants an enhanced fee so long as the attorney demonstrates "distinctive knowledge" or a "specialized skill"); *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) ("Environmental litigation is an identifiable practice specialty that requires distinctive knowledge."); *Pirus v. Bowen*, 869 F.2d 536, 541 (9th Cir. 1989) ("The expertise and skills [in social security law] that [the attorneys] developed are in many ways akin to those developed by a patent lawyer."); *In re Tom Carter Enterprises, Inc.*, 159 B.R. 557, 562 (Bankr. C.D. Cal. 1993) (finding that plaintiff's counsel "had specialized knowledge in the area of bankruptcy jurisdiction"). However, contrary to plaintiff's assertions, the Courts have routinely held that "there is nothing about litigating a bid protest case, even when the agency engaged in 'egregious' misconduct, that requires 'some distinctive knowledge or skill' that is both 'needful for the litigation in question' and 'can be obtained only at rates in excess of the [statutory] cap.'" *Starry Assocs., Inc. v. United States*, 892 F.3d 1372, 1381 (Fed. Cir. 2018) (citing *Pierce*, 487 U.S. at 572); *see also BCPeabody*, 117 Fed. Cl. at 415; *Prowest Diversified, Inc. v. United States*, 40 Fed. Cl. 879, 889 (1998). As government contracts experience is not recognized as "distinctive knowledge" or a "specialized skill," the Court finds that counsel failed to demonstrate that she qualifies for the "limited availability" exception to the statutory cap.

Additionally, plaintiff argues that, because of the "specialized legal expertise and experience of counsel," the outcome of the underlying litigation "was fairly extraordinary given case precedent and the broad discretion accorded procurement officials in the evaluation of proposals." Pl.'s EAJA Reply at 2. In support of that argument, the plaintiff alleges that "[m]embers of the Government Contracts Bar[2] acknowledge the uniqueness of the result achieved by counsel given applicable case precedent, the broad deference accorded procurement officials, and the high thresholds to be overcome and burdens to be met by a protester in order to prevail on these issues." Pl.'s EAJA Reply at 10.

This Court has previously held that "'[e]xceptional results are results that are out of the ordinary, unusual, or rare.'" *Applegate v. United States*, 52 Fed. Cl. 751, 771–72 (2002) (quoting *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)). While the Supreme Court seemingly "left a little wiggle room, implying, albeit in *dicta,* that considerations such as 'the important factor of the results obtained' might lead a court permissibly to adjust a fee upward," *Applegate*, 52 Fed. Cl. at 764 (quoting *Blum v. Stenson*, 465 U.S. 886, 897, n.14 (1984)), "'results are not exceptional merely because of the nature of the right vindicated or the amount recovered.'" *Applegate*, 52 Fed. Cl. at 772 (quoting *Norman*, 836 F.2d at 1302). The "exceptional results" threshold is high, and the courts have declined to find a plaintiff met that threshold, even where "[a plaintiff] obtained an injunction and the agency was ordered to re-solicit and award the contract." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750, 773 (2011). The outcome in the underlying litigation here is far

---

2   *See also* Kate H. Kennedy, *Protest Alleging Unfair Treatment in the Evaluation Process Succeeds in the Court of Federal Claims*, GOVERNMENT CONTRACTS INSIDER (Sept. 14, 2018), https://www.dwt.com/blogs/government-contracts-insider/2018/09/protest-alleging-unfair-treatment-in-the-evaluatio.

more analogous to the outcome in *Impresa* than to the outcome in *SUFI*, where plaintiff's counsel achieved "what is likely the largest judgment on record against the Government on a Non-Appropriated Funds contract."[3] *SUFI*, 128 Fed. Cl. at 700. The results in the case at bar were neither "out of the ordinary, unusual, [nor] rare." *Applegate*, 52 Fed. Cl. at 772. As such, the "exceptional result" exception to the statutory cap does not apply. As no special factor applies under EAJA, plaintiff's request for an enhanced rate based on special factors is denied.

### ii. Cost of Living Adjustment

The second exception to the statutory cap enumerated in 28 U.S.C. § 2412(d)(2)(A) applies when the Court determines that a COLA is warranted. *Id*. A COLA is generally permitted "as a reflection of the increase in the cost of living from the effective date of the statutory cap to the date legal services were rendered." *See Cal. Marine Cleaning*, 43 Fed. Cl. at 733. Although a COLA is awarded at the Court's discretion, "justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')," *id.*, so long as the applicant "suppl[ies] the Court with relevant CPI data." *Infiniti Info. Sols., LLC v. United States*, 94 Fed. Cl. 740, 751 (2010). Where a plaintiff successfully shows an increase in the cost of living, this Court has regularly held that a COLA "should be freely granted." *WHR Grp., Inc. v. United States*, 121 Fed. Cl. 673, 679 (2015) (citing *United Partition Sys. v. United States*, 95 Fed. Cl. 42, 58 (2010)). Plaintiff provided the appropriate CPI data with its COLA Brief filed on November 18, 2019. *See generally* Pl.'s COLA Br. Exs. 1–3.

Courts have routinely calculated a COLA by multiplying EAJA's $125 hourly cap by the applicable CPI and then dividing that product by $155.7[4] which is the CPI for March 1996, when the cap was raised from $75 to $125. *See WHR Grp. Inc.*, 121 Fed. Cl. at 679. In determining which CPI is applicable to a given award, the Federal Circuit has endorsed the use of "a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point." *Lion Raisins*, 57 Fed. Cl. at 519 (citing to *Chiu v. United States*, 948 F.2d 711, 722 n. 10 (Fed. Cir. 1991)); *see also WHR Grp*, 121 Fed. Cl. at 679. "Under the 'mid-point' method, the Court determines the 'month that lies at the mid-point between the first and last month for which attorneys' fees are being awarded,' and uses the CPI for that 'mid-point' month as the basis for the cost of living adjustment to the statutory cap." *WHR Grp.*, 121 Fed. Cl. at 679 (citing *DGR Assocs., Inc. v. United States*, 97 Fed. Cl. 214, 221 (2011), *rev'd on other grounds*, 690 F.3d 1335 (Fed. Cir. 2012)). The formula for calculating a COLA adjustment is as follows:

$$\frac{\$125 \times \text{Relevant CPI Month}}{\$155.7 \text{ (March 1996 CPI)}}$$

---

[3] While the Court acknowledges that the underlying litigation in *SUFI* was of a different ilk than that of the underlying litigation here, the Court believes language in *SUFI* is informative in determining what a unique outcome looks like.

[4] $155.7 is the CPI for March 1996 when EAJA was amended to raise the $75 statutory cap to $125. *Cal. Marine Cleaning*, 43 Fed. Cl. at 733–34; *see* Contract with America Advancement Act of 1996, Pub. L. No. 104-121 § 232(b)(1), 110 Stat. 847, 863.

*See Lion Raisins*, 57 Fed. Cl. at 520 n.19 (utilizing the above formula to establish attorneys' fees).

This Court has historically corrected a plaintiff's COLA calculations when that plaintiff utilizes an incorrect baseline month or the incorrect end date for measuring its COLA, even when the defendant does not challenge the calculation. *See, e.g.*, *Cal. Marine Cleaning*, 43 Fed. Cl. at 733–34. Here, the Court notes that 2M incorrectly calculated its proposed COLA adjustment amount, by dividing by $158.4 instead of by the March 1996 CPI figure of $155.7. Pl.'s COLA Br. at 4.[5] "The mid-point inflation adjustment factor applicable to services performed before and after the mid-point is the month that lies at the mid-point between the first and last month for which attorneys' fees are being awarded." *DGR Assocs.*, 97 Fed. Cl. at 221. Plaintiff is seeking a compensation for services provided between October 2017 and April 2019. Pl.'s COLA Br. at 3. As such, July 2018 is the applicable mid-point, and the CPI for that month was $262.016. Utilizing the aforementioned formula, the Court assesses the correct COLA adjustment amount to be $210.35.

### iii. The Court's Final Award Amount

2M seeks compensation for 491.3 attorney hours. Pl.'s COLA Br. at 4. However, ▓ of those hours were performed as part of 2M's earlier protest at the GAO and are ineligible for EAJA recovery. Plaintiff seeks compensation for work conducted from October 1, 2017, through April 30, 2019. *See generally* Pl.'s EAJA Appl. Ex. 2; *see also* Pl.'s Suppl. Br. Ex. 1 Attach. B, at 1–9. However, a plaintiff "may only recover fees incurred with respect to the present civil action." *Cal. Marine Cleaning*, 43 Fed. Cl. at 731; *see Oliveira v. United States*, 827 F.2d 735, 744 (1987) (stating that this Court "may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court."). Accordingly, fees related to 2M's protest before the GAO may not be recovered. Plaintiff seeks compensation for 31.6 hours of work performed as part of 2M's protest before the GAO. *See* Pl.'s EAJA Appl. Ex. 2, at 2–3. Therefore, the Court declines to include the ▓ attorneys' hours billed prior to October 23, 2017 in plaintiff's award. Of the remaining ▓ hours that plaintiff seeks, ▓ hours were performed by a paralegal, and must also be subtracted from the Court's calculation of COLA-adjusted attorneys' fees. Thus, plaintiff may only recover ▓ attorney hours at the COLA rate. After multiplying the number of attorney hours by the COLA-adjusted rate of $210.35, the Court finds that plaintiff is entitled to $▓ in COLA-adjusted attorneys' fees.

Additionally, plaintiff seeks to recoup ▓ paralegal hours performed by ▓ and ▓ paralegal hours performed by ▓. Pl.'s EAJA Appl. Ex. 1, at 8–10; Pl.'s Suppl. Br. Ex. 1 Attach. B, at 6. In *Richlin Sec. Serv. Co. v. Chertoff*, the Supreme Court held that paralegal fees are recoverable as agent fees at their "full market rate" under 5 U.S.C. § 504(b)(1)(A). 553 U.S. 571, 590 (2008). In a footnote the Supreme Court stated that it assumed without deciding "that the reasoning of [the] opinion would extend equally to [28 U.S.C. § 2412(d)(2)(A)]." *Id.* at 577 n.3. The Federal Circuit has held that, while paralegal fees are recoverable at their full market rate, they are also subject to EAJA's $125 statutory cap.

---

[5] The correct calculation is: $125 EAJA Cap multiplied by $262.016, the CPI for July 2018, divided by the March 1996 CPI ($155.7), which gives a COLA of $210.35.

*Levernier Constr., Inc. v. United States*, 947 F.2d 497, 503 (Fed. Cir. 1991). The Federal Circuit further stated that, since the statute does not refer to a COLA for non-attorneys, those fees may not be augmented by a COLA. *Id.* Therefore, the Court awards plaintiff $▮ in paralegal fees comprised of ▮ paralegal hours at $125 per hour.

Finally, plaintiff seeks a total of $▮ in costs, comprised of expenses between October 2017 to April 2019. Pl.'s EAJA Appl. Ex. 1, at 8; Pl.'s Suppl. Br. Ex. 1 Attach. B, at 4. Defendant's only objection to plaintiff's claimed costs is that, since "2M is not entitled to reimbursement for its fees associated with the GAO proceeding, [GAO expenses] should be disallowed." Def.'s EAJA Resp. at 9. The Court agrees that 2M may not recover expenses incurred during the GAO protest. Therefore, the Court awards plaintiff $▮ in expenses, comprised of plaintiff's claimed expenses less the $▮ spent on postage on October 2, 2017, during the course of the GAO protest. Pl.'s EAJA Appl. Ex. 2, at 4. Accordingly, the Court awards plaintiff $97,169.13 in combined attorneys' fees and costs.

### 2. Bad Faith

Finally, plaintiff argues that it is "entitled to recover a full award of attorneys' fees and costs based on FEMA's bad faith actions under 28 U.S.C. § 2412(b)." Pl.'s COLA Br. at 8. Section 2412(b) states that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). Under the common law, "a prevailing party is entitled to an award of fees and expenses when the losing party 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" *SUFI*, 128 Fed. Cl. at 688 (citations omitted). In promulgating its bad faith argument, plaintiff claims that "FEMA took deliberate steps to obfuscate the facts and attempted to avoid abiding by controlling procurement law and regulation." Pl.'s COLA Br. at 8. Plaintiff additionally argues that "[d]efendant exacerbated its bad faith conduct by disputing 2M at every turn." Pl.'s COLA Reply at 8. In response, defendant argues that the Court should not consider plaintiff's bad faith argument because it is "untimely, waived, undeveloped, and not properly before the Court." Def.'s COLA Resp. at 2. Defendant further claims that "2M waived the argument by failing to raise it in its EAJA application." *Id.*; *see United States v. Ford Motor Co.*, 463 F.3d 1267, 1276 (Fed. Cir. 2006) ("Arguments raised for the first time in a reply brief are not properly before this court."). The Court agrees with the government's understanding of waiver, and, as a result, declines to consider plaintiff's bad faith arguments.

### III. Conclusion

For the reasons set forth above, plaintiff's Application for Attorneys' Fees and Costs is **GRANTED** in part and **DENIED** in part. Accordingly, plaintiff is entitled to recover attorneys' fees and costs pursuant to 28 U.S.C. § 2412(d) in the amount of $97,169.13.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge